UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHERYL ANN SUBLETTE,

                            Plaintiff,

                                                        <u>DECISION AND ORDER</u>

                                                        10-CV-6299L

                            v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                            Defendant.
_____

       In this action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("the Commissioner"), plaintiff Cheryl Ann Sublette ("plaintiff") appeals from the Commissioner's denial of disability insurance benefits and supplemental security income benefits.

       On April 15, 2003, November 15, 2003, July 6, 2005 and August 23, 2006, plaintiff, 44 years old at the time of her initial application, applied for disability insurance benefits and supplemental security income benefits under Title II of the Social Security Act. Plaintiff alleged an inability to work since April 1, 2001. Each of those applications was denied initially, and on reconsideration. (T. 36-45). Plaintiff requested a hearing, which was held on July 17, 2008 before Administrative Law Judge ("ALJ") Robert E. Gale. (T. 1014-1047). The ALJ issued a decision on July 17, 2008, concluding that plaintiff was not disabled under the Social Security Act. (T. 19-35). That decision became the final decision of the Commissioner on April 2, 2010, when the Appeals Council denied review. (T. 11-15). Plaintiff now appeals.

       Plaintiff was subsequently granted SSI benefits on an application which post-dated the ALJ's decision, with an onset date of February 1, 2009. Plaintiff has now indicated, however, on this appeal, that she is "amenable" to adjusting her alleged onset date to March 31, 2008, the date her insured status expired. (T. 1003, Dkt. #12-1 at 33). In light of the dearth of medical

evidence concerning plaintiff's alleged severe physical and mental limitations for the period prior to late 2007 or early 2008, the Court accepts plaintiff's request to consider her application, but with the later onset date of March 31, 2008.[1]  Thus, the Court will consider plaintiff's claims of disability solely for the period between March 31, 2008 and February 1, 2009.

The Commissioner has moved (Dkt. #11), and the plaintiff has cross moved (Dkt. #12), for judgment on the pleadings pursuant to Fed. R. Civ. Proc. 12(c).  For the reasons discussed below, plaintiff's motion is granted, the Commissioner's motion is denied, and the matter is remanded solely for the calculation and payment of benefits.

**DISCUSSION**

**I.      Analysis of Disability Claims**

Determination of whether a claimant is disabled within the meaning of the Social Security Act requires an ALJ to follow a now-familiar five-step analytical sequence.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity.  *See* 20 CFR §404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two, and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act.  20 CFR §404.1520©.  If not, the analysis concludes with a finding of "not disabled."  If so, the ALJ continues to step three.

At step three, the ALJ examines whether the claimant's impairment meets or equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4.  If the impairment meets or medically equals the criteria of a listing and meets the durational requirement (20 CFR §404.1509), the claimant is disabled.  If not, analysis proceeds to step four, and the ALJ

---

[1] As discussed in greater detail below, the RFC reports of plaintiff's physicians and other medical evidence establishing disability generally point to a period of onset between September 2007 and April 2008.  (T. 838, 844-847,  848-850, 918-920, 937, 941, 946).

determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or metal work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 CFR §404.1520(e), (f). Then, the ALJ determines whether the claimant's RFC permits her to perform the requirements of her past relevant work. If so, the claimant is not disabled. If not, analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled, by presenting evidence demonstrating that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986)). *See* 20 CFR §404.1560©.

The Commissioner's decision that plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir.2002). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). "The Court carefully considers the whole record, examining evidence from both sides 'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Tejada v. Apfel,* 167 F.3d 770, 774 (2d Cir. 1998) *quoting Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir.1997). Still, "it is not the function of a reviewing court to decide de novo whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute our judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir.2002).

**II.     The ALJ's Decision**

ALJ Gale's decision analyzes the medical evidence of record, and explicitly applies the "special technique" prescribed for claims of physical and mental impairments.  20 C.F.R. §§404.1520a(c)(3), 416.920a(c)(3).

The ALJ first considered plaintiff's claims of disability caused by a combination of degenerative disc disease and depression, which the ALJ determined together constituted a severe impairment not meeting or equaling a listed impairment.  In so finding, the ALJ rejected plaintiff's claims of fibromyalgia, among other conditions, as "not medically determinable."  (T. 26).

In analyzing the pertinent evidence of plaintiff's exertional limitations, the ALJ found that plaintiff could perform a full range of light work: she could lift and carry 20 pounds occasionally and 10 pounds frequently, and sit, stand and/or walk 6 hours in an 8-hour day.  (T. 26-28).

With respect to non-exertional limitations, the ALJ concluded that plaintiff had failed to show that she was severely mentally impaired with regard to any of four designated areas: activities of daily living, maintaining social functioning, maintaining concentration, persistence or pace, and repeated episodes of extended decompensation.  The ALJ found that plaintiff was only "mildly" restricted in activities of daily living and social functioning, "moderately" restricted with respect to concentration, persistence and pace, and had experienced no episodes of decompensation.  (T. 27-28).  He did find, and incorporated in plaintiff's RFC, that plaintiff can understand, remember and perform simple tasks and learn new, simple tasks in a low-stress environment, with only occasional changes in the work setting and occasional decision-making.

Given the physical and mental limitations of the plaintiff's RFC, the ALJ determined that a vocational expert's testimony was unnecessary, because plaintiff's non-exertional impairments did not "significantly" limit the range of light work she was capable of performing.

### III.     Plaintiff's Appeal

Plaintiff primarily claims that the ALJ failed to give proper weight to the reports of her three treating physicians, primary care physician, Dr. Shahid Ali, rheumatologist Dr. James Freeman, and psychiatrist, Dr. Mihai Dascalu.  Plaintiff's specifically highlights the ALJ's failure to credit Dr. Ali's September 25, 2007 opinion that plaintiff was incapable of working in any capacity due to the physical limitations posed by her combined physical and psychological impairments (T. 838, 864), his dismissal of Dr. Freeman's diagnosis of fibromyalgia (T. 849, 938) as unsupported, and the "limited" weight given to Dr. Freeman's RFC reports from November 2007, which listed significant functional limitations comprising less than the full range of sedentary work, and stated that plaintiff was incapable of working in any capacity (T. 844-847, 863).  The ALJ also rejected Dr. Dascalu's opinion that plaintiff was moderately, markedly and/or extremely limited in two or three areas of cognitive functioning and unable to work, on the grounds that his opinion cited solely to plaintiff's self-reported physical condition, and not to any psychiatric signs or tests.

It is well settled that a treating physician's opinion is entitled to controlling weight, if it is well-supported by medical findings and not inconsistent with other substantial evidence.  *See Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999).   If an ALJ declines to afford controlling weight to the opinion of a treating physician, the ALJ must consider: (1) the examining relationship; (2) the extent of the treatment relationship; (3) medical support for the opinion: (4) consistency; and (5) the physician's specialization, along with any other relevant factors.  29 C.F.R. §404.1527(d)(2).  An ALJ's failure to apply these factors and provide reasons for the weight given to the treating physician's report is reversible error.  *See Snell v. Apfel*, 177 F.3d 128,1 34 (2d Cir. 1999); *Schall v. Apfel*, 134 F.3d 496 (2d Cir. 1998).

I find that the ALJ's failure to give controlling weight to the opinions of Drs. Ali, Freeman and Dascalu was improper, and that the ALJ failed to consider the consistency of those

opinions with contemporaneous treatment notes and other medical evidence of record, and in some cases overlooked supporting medical evidence and objective test results.

The ALJ rejected Dr. Ali's and Dr. Freeman's assessments largely on the basis of his finding that plaintiff's fibromyalgia, as diagnosed, described and treated by both doctors, was not "medically determinable" because it was unsupported by objective testing or a specified number of trigger points. (T. 30). The Second Circuit recognizes that, "a growing number of courts, including our own . . . have recognized that fibromyalgia is a disabling impairment and that 'there are no objective tests which can conclusively confirm the disease.'" *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (reversing ALJ's finding that claimant was not disabled, because ALJ failed to credit diagnosis of fibromyalgia by claimant's treating physician), *quoting Preston v. Sec. of Health and Human Servs.*, 854 F.2d 815, 818 (6th Cir. 1988). However, to the extent that objective medical testing is capable of supporting the diagnosis, "the presence of tender points [is] the primary diagnostic technique for fibromyalgia." *Green-Younger*, 335 F.3d 99 at 108 n. 14. Contrary to the ALJ's belief that none of plaintiff's physicians had set forth the number of tender trigger points on examination, on August 29, 2007, Dr. Freeman reported to Dr. Ali that plaintiff had shown tender areas on at least 12 of the 18 recognized fibromyalgia trigger points. Specifically, he noted "widespread trigger point tender areas including the upper and lower back, coracoids [shoulder blade area], epicondyles [elbows], tonchanteric [hips] and anserine regions [knees]. Also the lower ribcages anteriorly." (T. 849). On March 24, 2008, Dr. Freeman noted that plaintiff "still has widespread trigger point tender areas." (T. 937) Because Dr. Freeman's diagnosis was based on a combination of trigger point findings, as well as multiple objective tests to rule out other conditions (T. 725, 771, 848), the ALJ's wholesale rejection of the fibromyalgia diagnosis, along with Dr. Ali's and Dr. Freeman's reports concerning plaintiff's RFC due to fibromyalgia and other conditions, was improper, and ignored or mischaracterized supporting medical evidence of record.

Finally, Dr. Dascalu's report, which opines that plaintiff is "moderately" to "extremely" limited in her ability to understand and carry out simple instructions, and "extremely" limited in

her ability to carry out social interactions, was dismissed by the ALJ as having been improperly based solely on plaintiff's "limited education and then serious medical [physical] condition," as opposed to her mental condition, and therefore outside of the scope of her treatment relationship with Dr. Dascalu. (T. 33, 918).

However, the ALJ appears to have overlooked the remainder of Dr. Dascalu's report, which emphasizes that due to plaintiff's interrelated physical pain and severe depression, her ailments "hit[] this person several times harder than my other patients. Her coping skills and her ability to adjust to the physical and mental limitation [sic] are much worse than for other people in her situation." (T. 919). Plaintiff's mental health treatment records for the period between November 2007 and March 2008 support Dr. Dascalu's view, consistently reflecting plaintiff's pattern of severe depression, frequent thoughts of harming or killing herself or others, and complaints of constant distraction, frustration and anxiety caused by her alleged constant and severe physical pain. (T. 920-944). Moreover, contrary to the ALJ's finding, Dr. Dascalu's opinion was not based solely on plaintiff's self-reports, but on the results of his objective professional assessments of her cognitive functioning and overall mental health. (T. 935, 939, 942-943).

Based on the foregoing, I find that the Commissioner has failed to meet his burden to explain why the opinions of plaintiff's treating physician, rheumatologist and psychiatrist were not afforded controlling weight. In rejecting their opinions, he improperly and "arbitrarily substituted his own judgment for competent medical opinion," and "set his own expertise against that of [physicians] who [submitted an opinion to or] testified before him." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir.1998). The Commissioner has also failed to meet his burden to demonstrate that plaintiff, during the entire period in question, could perform any work that existed in the economy.

Where, as here, further administrative proceedings would serve no purpose, remand for the calculation of benefits is warranted. *See Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *Martinez v. Commissioner*, 262 F. Supp. 2d 40, 49 (W.D.N.Y. 2003). First, the Commissioner has failed to meet his burden to prove that plaintiff was not disabled during the period now in

question. *See e.g., Huhta v. Barnhart*, 328 F. Supp. 2d 377 (W.D.N.Y. 2004) (where Commissioner fails to meet his burden despite ample opportunity to do so, a finding of disabled is warranted). Moreover, the opinions of plaintiff's treating physician, rheumatologist and psychiatrist were entitled to controlling weight. When credited, those opinions reflect a substantial loss of plaintiff's ability to perform the physical or mental activities required for sedentary work, thus significantly eroding her ability to perform unskilled sedentary work, and justifying a finding of disability. *See generally* Social Security Ruling 96-9p, 1996 SSR LEXIS 6 (1996) ("[a] substantial loss of ability to meet any one of several basic work activities on a sustained basis . . . will substantially erode the unskilled sedentary occupational base and would justify a finding of disability"). Because additional proceedings would serve no conceivable purpose, remand solely for the calculation and payment of benefits is warranted.

## CONCLUSION

For the reasons discussed herein, the Commissioner's motion for judgment on the pleadings (Dkt. #11) is denied, plaintiff's cross motion for judgment on the pleadings (Dkt. #12) is granted, and the matter is remanded solely for the calculation and payment of benefits, with an onset date of March 31, 2008, through the effective date of the subsequent grant of benefits to plaintiff, on or around February 1, 2009.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       April 13, 2012.